694        NEBRASKA REPORTS.        [VOL. 86

Moor v. Keck.    Occidental Building & Loan Ass'n v. McGrew.

JOSEPH P. MOOR, TRUSTEE, APPELLANT, V. MOSES H. KECK
ET AL., APPELLEES.

FILED MAY 2, 1910.    No. 15,998.

OCCIDENTAL BUILDING & LOAN ASSOCIATION, APPELLEE, V.
CHARLIE H. MCGREW ET AL., APPELLEES; DAVID L.
FAIR ET AL., APPELLANTS.

FILED MAY 5, 1910.    No. 15,976.

1. **Mortgages:** FORECLOSURE: MISTAKE: RELIEF. A was the owner of four adjacent and adjoining lots in a platted addition to a city, their numbers being 13, 14, 15 and 16, of the value of $50 each. There were 24 lots in the half block, numbered from 1 to 24, consecutively. He attempted to construct a dwelling-house on lots 15 and 16, and to aid in such construction borrowed money from B, and to secure the payment of the same executed a mortgage on lots 15 and 16. By the mistake of both A and B the house was built upon lots 17 and 18, to which A had no title. Later C, a stranger, removed to and settled in the city, and, upon being informed by both A and B that the house was located upon lots 15 and 16, purchased said lots 15 and 16, paying $950 therefor. $700 of the purchase price was paid to B in satisfaction of his mortgage thereon, and the remainder of the purchase price to A. A then executed a mortgage to B on lots 13 and 14 for the pur-

pose. of constructing a house thereon. He partly completed the house, when it was discovered that it stood on lots 15 and 16, which lots belonged to C, when he abandoned the same, and C took possession, and B commenced suit to foreclose his mortgage on lots 13 and 14 and the house on lots 15 and 16. It is *held* that as the mistake originated with A and B, and C purchased relying on their representations, and had paid full value for lots 15 and 16 with the improvements thereon, the major portion of the purchase price having been paid to B, B was not entitled to any relief as against C.

2. **Mechanics' Liens.** "A mechanic's lien in favor of a principal contractor grows out of the contractual relations between the owner of the property improved, or his authorized agents, and such principal contractor, and the right thereto is based upon contract and for the purpose of securing debts due thereunder." *Rust-Owen Lumber Co. v. Holt*, 60 Neb. 80.

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, JUDGE. *Reversed with directions.*

*George A. Adams,* for apellants.

*Wilmer B. Comstock, T. J. Doyle* and *G. L. De Lacy,* contra.

REESE, C. J.

It is difficult to conceive of a more complicated and involved case than this. The chronological order of events deemed material to the consideration of this case, as drawn from the statements contained in the briefs and made upon the arguments, appears to be about as follows: On and prior to the 25th day of June, 1906, the McGrews were the owners of lots 13, 14, 15 and 16, in block 1, in Woods and Kelly's first addition to College View, all of which were vacant. That block is composed of 48 lots, 24 of which, numbering from 1 to 24, inclusive, are upon the north side of the block fronting on Prospect street, the other 24 fronting to the south. On the 5th of March, 1906, the McGrews executed a mortgage to plaintiff on lots 15 and 16 of said block to secure the payment of the sum of $700, and thereafter erected a dwelling-house upon

said lots, as they then supposed, but which was by mistake erected on lots 17 and 18, to which they had no title. On the 25th day of June, 1906, they sold and conveyed by warranty deed lots 15 and 16 to defendants Fairs for the expressed consideration of $1,050, all parties believing that the conveyance included the dwelling-house which was supposed to be on said lots, the deed being recorded June 29, 1906. The Fairs took possession of the house, and later paid the $700 mortgage to plaintiff. On the 14th day of August, 1906, the McGrews executed to plaintiff another mortgage on lots 13 and 14 to secure the sum of $800, which is the mortgage the foreclosure of which is sought in this action. The McGrews constructed a dwelling-house and barn upon those lots, as they supposed, but by another mistake placed the same upon lots 15 and 16, the title to which were in the Fairs. Defendant Sullivan, under a contract with the McGrews, furnished material to the said McGrews for the construction of this house and barn, and later, on November 28, 1906, filed his statement for a mechanic's lien on lots 13, 14, 15 and 16, amounting to the sum of $481.45. After this second house was about completed McGrew, discovering the mistake he had made, called upon the Fairs, and informed them of the fact and agreed that he would procure the title to lots 17 and 18, upon which the house stood, and the Fairs could then reconvey the title to lots 15 and 16 to him. Later on he informed the Fairs that he could not obtain such title. It seems that McGrew's brother had purchased the lots. As to the good faith or fraud on the part of the McGrews in this purchase by the brother we now have nothing to do. Upon the discovery of the mistake, Fair took counsel with a reputable attorney as to his rights, and was advised that as he was the owner of lots 15 and 16, his title being of record, he should take possession of his lots and the improvements thereon, which he did, and abandoned his possession of lots 17 and 18. The house on lots 15 and 16 not having been quite completed, Sullivan removed his unused material, and

furnished no more.  Fair furnished material, finished the work at an expense of $200, and retained his possession. Lots 13 and 14, upon which no improvements have been made, and which are yet vacant, are of little value, not sufficient to meet the demands of any defendant.

Upon the discovery of the errors and mistakes above enumerated, plaintiff, the building and loan association, instituted this action for the foreclosure of its mortgage, making the McGrews, Fairs, and Sullivan parties defendant.  The McGrews did not answer or otherwise plead, and default was entered against them.  The pleadings are quite lengthy and voluminous, and the transcript is padded to an unnecessary extent, the original and amended pleadings being set out at length.  Transcripts could be very much diminished in size and volume, as well as in costs, if counsel would guard against the inclusion of unnecessary files and papers, by giving specific directions to the clerk as to what should be certified.  The averments of plaintiff's amended petition (substituted for the original) contain the facts of the execution of its note and mortgage, according to the usual form of pleading in suits for foreclosure, setting out a copy of the mortgage, showing it to be upon lots 13 and 14, and further alleges that defendants McGrews were at the time of the execution of the note and mortgage the owners and in possession of lots 13 and 14, and in possession and occupancy of lots 15 and 16, and had commenced the erection and construction of a dwelling-house on lots 15 and 16, and that at that time the McGrews represented that the money then borrowed, and to secure which the mortgage was given, was for the erection of the dwelling-house on lots 13 and 14, and, plaintiff believing that said improvements were being constructed upon said lots, accepted the mortgage thereon; that the parties to the mortgage were mutually mistaken as to the location of said improvements, and, instead of being upon lots 13 and 14, they were upon lots 15 and 16, and that the money so furnished by plaintiff was to be, and was, used in the

construction of said improvements. The facts herein above stated as to the mistakes of the McGrews and the Fairs as to the location of the house on lots 17 and 18, as well as to lots 15 and 16, are alleged, and need not be herein restated. Further allegations are that during all of the time in which the house was being constructed on lots 15 and 16 the Fairs had full knowledge of what was being done, and were using and occupying lots 17 and 18 and the dwelling-house thereon, asserting ownership thereof, and they also knew that the improvements being made were made with and by the use of the money furnished by plaintiff for that purpose, but gave no notice of any claim of title or ownership of said lots 15 and 16; that they paid nothing toward the construction of the improvements; that after the completion of said dwelling-house they, with knowledge of all the facts, took possession and asserted ownership, claiming the property to be free and clear of the lien of plaintiff's mortgage. It is alleged that by reason of the then known mistakes, the silence of the Fairs, and the expenditure of the money furnished by plaintiff in the improvements, the Fairs are estopped to assert any right to or interest in said buildings or the lots on which they stand. Practically the same facts are made to apply to the claim of Sullivan for the enforcement of his mechanic's lien, and it is alleged that it had been agreed by and between plaintiff and Sullivan that plaintiff's lien should be considered, and was, prior to the lien of said Sullivan, if any existed; that lots 13 and 14 are of no value; that the McGrews and Fairs are insolvent, and the only means for the collection of the money due plaintiff is by the application of the property in question to the payment thereof. The prayer is for a reformation of the mortgage, by causing it to include lots 15 and 16 with the improvements thereon, and that it be foreclosed as to lots 13 and 14, 15 and 16, and for general relief.

Defendant Sullivan filed his answer and cross-petition, in which the averments of the petition as against the other defendants are, in the main, admitted, closing with

a general denial of all facts not admitted. By the cross-petition it is alleged that about the 8th day of September, 1906, the answering defendant, Sullivan, and the Mc-Grews entered into a contract by which the said Sullivan agreed to furnish to the McGrews lumber, lime and other building material for the erection of a dwelling-house on lots 13, 14, 15 and 16, block 1, in the addition referred to, and in pursuance of said contract he did furnish building material for said improvements to said McGrews to the extent and amount of $681.45, all of which was used in the construction of the dwelling-house on lots 15 and 16; that at said time the said McGrews were in the undisputed and exclusive possession of said lots 15 and 16, claiming to be the owners thereof, and were the owners in fee of lots 13 and 14 "and said lots 15 and 16." The filing of the statement and claim in the proper county offices is alleged, and it is averred that the sum of $481.45 is still due, with interest, and that at the time of the making of said contract all of said lots were vacant and unimproved. The facts of the alleged mistakes of the defendants Mc-Grews and Fairs, and the taking possession of lots 17 and 18 by the Fairs, are set out, practically as hereinbefore stated, together with the alleged knowledge of the Fairs that the improvements for which defendant Sullivan furnished the material were being made on lots 15 and 16, their acquiescence in the construction of the improvements, and the alleged fact that the Fairs paid nothing for the house before taking possession, and it is averred that the Fairs are now estopped to claim said property, or to deny or controvert the claim for the value of the material furnished. The prayer is for judgment against the McGrews and the Fairs for the sum of $481.45, with interest; that the premises be ordered to be sold; and, should the court determine that lots 15 and 16 should not be sold under the decree, then and in that event that the court order the house to be sold, with authority for the purchaser to move it from the lots where it stands; that the mechanic's lien be declared the first lien upon the

premises, and the equities of the defendants therein be foreclosed, and for general relief. A copy of the account is attached to the cross-petition.

The defendants, David L. Fair and Ruth A. Fair, his wife, for their answer to the amended petition of plaintiff, admit the corporate character of plaintiff, and that the note and mortgage were made by McGrew and wife, but deny that plaintiff furnished McGrew the full sum of $800, the amount named in the mortgage, or that that amount is due thereon, and require strict proof thereof. They deny that either the ownership or possession of lots 15 and 16 was in the McGrews from or after the 29th of June, 1906, when their deed of the 25th of that same month was recorded, and allege that from that date they have ever been and now are the owners of said lots, and also deny that they ever were the owners of lots 17 and 18, or that they in any way purchased either of them or that the defendants McGrews ever owned them. They allege the fact of the existence of the $700 note and mortgage of March 5, 1906, and that as a part of the purchase price of lots 15 and 16 they paid the same on the 26th day of June, 1906, and received a receipt, release and satisfaction of the same, and that the release was recorded in the proper records of the county on the 29th day of June, 1906, and that at the time of the payment plaintiff knew that they had purchased said lots, were the owners thereof, and were paying said note and mortgage as a part of the consideration and purchase price thereof. The facts of the mistakes in the location of the buildings, as hereinbefore stated, are set out at length, and it is averred that the McGrews represented to them that the house on lots 17 and 18 was on lots 15 and 16, which representations were relied upon, they not knowing the lines of said lots; that when the McGrews discovered that the said house was on lots 17 and 18, instead of on lots 15 and 16, said McGrews had partially erected a house on lots 15 and 16, believing they had erected it on lots 13 and 14, and they then refused to complete the house on lots 15 and 16,

and turned it over to defendants Fairs, when the latter took possession, and Sullivan at once removed all unused and unattached material from said lots, and defendants Fairs were compelled to and did furnish the necessary material to complete the same at an expenditure of over $200 in labor and material, and they have ever since been in the actual and peaceable occupancy thereof. There is a general denial of unadmitted allegations of the petition, and a special denial of any right to or lien of any character upon said lots 15 and 16 in favor of plaintiff, and it is alleged that, by plaintiff having accepted the money from defendants in payment of its prior mortgage on said lots 15 and 16, it is now estopped to claim any rights as. against said lots 15 and 16, or the buildings thereon. The prayer is for a dismissal of said petition, for recovery of costs, and for general relief.

Plaintiff, for reply to the answer of the Fairs, submitted a general denial of allegations not admitted, admitted the execution by the McGrews of the first mortgage on lots 15 and 16, but avers that it was given to secure the payment of money furnished by plaintiff to said McGrews for the erection and construction of the dwelling-house erected by them on lots 17 and 18. The averments of the mistake of the McGrews in the location of that house are repeated, and it is alleged that, when the McGrews sold the house on said lots 17 and 18 to the Fairs, the Fairs assumed and agreed to pay the debt as a part of the purchase price thereof, all parties believing that said house was located on lots 15 and 16, the property included in and bound by said mortgage. The Fairs, for their answer to the cross-petition of Sullivan, deny generally all unadmitted facts, and specifically deny that Sullivan furnished any lumber or material of any kind or under any contract to be placed in the building on lots 15 and 16, and deny the existence of any lien thereon in favor of Sullivan. Substantially the same facts as to the mistakes in the location of the buildings, the purchase and convey-ance to them of lots 15 and 16, the recording of their deed

on the 29th day of June, 1906, and their continued and uninterrupted ownership of the property are averred, but need not be repeated here. It is alleged that Sullivan became aware of the error in the construction of the house on lots 15 and 16, instead of on lots 13 and 14 as was intended by him and the McGrews; that the house was unoccupied, and portions of the material had been furnished upon the ground, but not used; that Sullivan removed all thereof, and left the building unprovided with material, and they (the Fairs) were compelled to expend the sum of $200 for material and labor in the completion of the house; that at that time the said Sullivan had not filed any mechanic's lien on said property, and during the whole time he was furnishing said material he well knew that the Fairs were the owners of lots 15 and 16, they having bought and paid the full consideration of $950 for them; that their deed was upon record since the 29th day of June, previous to any contract between the McGrews and Sullivan to furnish material for the construction of a house on lots 13 and 14, and said Sullivan had no power or right to contract with the McGrews, or any one, for the purpose of erecting a house on lots 15 and 16; that the answering defendants are the owners in fee of said lots 15 and 16 and in possession thereof, and that Sullivan can have no lien thereon. Other averments, being in effect but repetitions of those in the other pleadings herein stated, need not further noticed. The reply of Sullivan to the answer of the Fairs is of great length, and practically covers the same ground as the reply of plaintiff, but more in detail. In reply to the averment in the Fairs' answer that, upon the discovery of the mistake as to the location of the buildings, the McGrews refused to complete the building on lots 15 and 16 and abandoned the same, turning the possession over to the Fairs, it is averred that it was "not in the power of said McGrews to turn over to the said Fairs the unfinished building located and situated on lots 15 and 16, with the material furnished for the erection of the same, under the circum-

stances stated in said answer, being unpaid and a lien existing on said building therefor, without first paying for said material, and it was not in the power of said McGrews or said Fairs to divert the lien created by the statute, and perfected by filing the same, as was done by defendant in this case, and when the said Fairs took possession of said premises and the said building they took possession thereof subject to said lien, ratified the purchase of said lumber and the existence of said lien, and assumed the payment of same." An estoppel is pleaded against the Fairs, and a general denial follows.

The cause was tried to the court, and extended findings of facts and decree were entered sustaining the validity of the mortgage of plaintiff and the mechanic's lien in favor of defendant Sullivan. It is ordered by the decree that, unless the defendants pay the several amounts found due (to plaintiff $700, and to defendant Sullivan $453.45, each with interest), the plaintiff is authorized to enter upon lots 15 and 16 with necessary assistance and remove the dwelling-house, with the foundation walls and cellar walls, and place the same on lots 13 and 14 in as near the identical situation as it now occupies on lots 15 and 16 as possible, with cellar and all walls as now existing on lots 15 and 16, and that after said removal the defendants' equity of redemption be foreclosed as to lots 13 and 14, and that an order of sale issue for the sale of said lots, and that they be sold and the proceeds be applied, first, to pay plaintiff $700, with accruing interest, together with the money necessarily expended in the removal of the house, foundation and cellar walls; second, to pay defendant Sullivan $453.45, with accruing interest; third, to pay the Fairs the sum of $200, with accruing interest. We find no provision in the decree for the payment of the costs of the foreclosure proceedings, nor for the restoration of defendants' lots to their former condition, by filling the cellar or other excavations made in the improvments by the McGrews, which would appear to be in harmony with the idea of placing the parties in the position

they would have been had the McGrews and plaintiff made no mistakes. In those respects the decree seems to be deficient.

The cause has been extensively briefed by the parties to the suit, each brief showing commendable and careful research, and the citation of many cases and authorities in support of the various claims. We will find it impossible to review the authorities cited, owing to their great number, and will have to be content with the statement of the facts, in part above detailed, followed with our view of the principles of equity to be applied.

It is shown by the evidence contained in the bill of exceptions that the defendants, the Fairs, removed and settled in the city of College View in April, 1906, being before that time strangers and having no knowledge as to the platting or subdivision thereof. Prior to their arrival defendants McGrews had executed a mortgage to plaintiff on lots 15 and 16, block 1 of the addition referred to, and had constructed, or were then constructing, the dwelling-house thereon, as was supposed, but which was in fact, constructed on lots 17 and 18, to which the McGrews had no title. This was the joint mistake of plaintiff and the McGrews, and for which the Fairs were in no way responsible, nor had they in any way entered into or in any sense been a party thereto. Mr. Fair testified that both plaintiff and McGrew represented to him that the house was situated on lots 15 and 16. Acting upon such representations and in the belief that the representations so made were true, he purchased lots 15 and 16 for the sum of $950. The purchase was made on June 25, 1906. The naked, unimproved lots (15 and 16) were of the value of $100. A warranty deed was executed by the McGrews to the Fairs on that date, conveying lots 15 and 16, for the expressed consideration of $1,050. Plaintiff then held a mortgage on 15 and 16 given to secure the sum of $700, bearing date March 5, 1906, which the Fairs had assumed and agreed to pay, and did pay to plaintiff, thereby clearing the title to lots 15 and 16, they not know-

ing of the mistake made by plaintiff and the Mc-Grews. The remainder of the purchase price they paid to the McGrews. Plaintiff executed a release of the mortgage on the 26th day of June, 1906. Upon the purchase of lots 15 and 16, the Fairs, by their tenants, the McGrews, took possession of the house and lots 17 and 18, believing, as informed by plaintiff and McGrew, that their true numbers were 15 and 16. By the payment of plaintiff's mortgage and the money paid to the McGrews, the Fairs paid the full purchase price of lots 15 and 16 and the house on lots 17 and 18 so placed by the mistake of the McGrews and plaintiff. While it appears that no fraud was intended by either the plaintiff or the McGrews, yet it must be conceded that there was such a want of care upon their part as to amount to neglect in the selection of the lots upon which the house should be erected. It is also apparent that all the Fairs received for the $950 or $1,050 paid by them to plaintiff and the McGrews was the title to lots 15 and 16, of the value of $100. On the 14th of August, following, the McGrews executed their mortgage on lots 13 and 14 to secure the sum of $800. With this the Fairs had nothing to do. That plaintiff and the McGrews were mistaken as to the exact location of those lots may be conceded, and which might easily have been corrected by consulting the plat and survey, and by a short time devoted to measurements, must also be conceded, but for this the Fairs were in no sense responsible or in any way blameworthy. True, they were laboring under the same mistake as to the location of the lots owned by the McGrews, yet that mistake on their part was caused, as Mr. Fair testified without contradiction, by the misrepresentation of the plaintiff and the McGrews. During the latter part of the summer or fall of 1906, the McGrews undertook to construct a dwelling-house on lots 13 and 14, being the same lots upon which they executed the mortgage of August 14 of that year to plaintiff, but by mistake placed it upon the lots (15 and 16) owned by the

48

Fairs. Of the construction of that house the Fairs had full knowledge, and Mr. Fair was employed by McGrew to labor on the excavation of the cellar, or possibly the construction of the foundation wall. As we read the evidence, he worked for the McGrews a fraction over one day. It is claimed by this he lost some right, but we cannot conceive such to be the case, as he was still laboring under the false impression and information created and given by plaintiff and the McGrews. When the house was well nigh completed, the Fairs took possession, claiming it as their own under the deed of conveyance made to them the previous June for that identical property, and for which, in its then condition, he had paid the full purchase price. Within a few days prior to that time McGrew had discovered the mistakes which he had made as to the location of the houses, and his absolute want of title to the lots on which the first house stood, and had notified the Fairs that he would abandon the house on lots 15 and 16, owned by the Fairs, in its unfinished condition. Upon the discovery by the Fairs, then for the first time, that they had no title to lots 17 and 18, they abandoned all claim to that property and took possession of lots 15 and 16, when plaintiff brought this suit to foreclose its mortgage on lots 13 and 14 and have the same decreed to include the house on the Fairs' lots 15 and 16. If the decree stands as entered by the district court, the Fairs will not only be deprived of the house for which they have paid full value to plaintiff and the McGrews, but the property will be taxed with the costs and expenses of the preparation of lots 13 and 14 for the reception of the house, and the removal of the house thereon, but the money they have expended in the completion of the house is relegated to the third lien thereon, which means a complete loss, and their own lots will be left with an open cellar excavation, necessarily injured by the removal of the walls and the house therefrom, and plaintiff will have recovered from the Fairs the full amount of its mortgages, leaving the Fairs but their vacant lots, all made

possible by the original errors and mistakes of plaintiff and the McGrews, to say nothing of their negligence in the inception and continuance of the transactions. True, the Fairs could pay the amount of the decree, and thus prevent the wresting from them of the property by plaintiff, and save the costs and expenses of the excavation and walling of the cellar on lots 13 and 14; but, if they did so, they would be required to pay not only the $700 of the decree, but the $950 paid for the property in the beginning, making a total of $1,650, $1,400 of which would be received by plaintiff from the Fairs for property for which they were indebted in the beginning in the sum of $950, all caused in the first instance by the fault of plaintiff and McGrew, as above outlined.

While agreeing with plaintiff's counsel that it is within the province of courts of equity to correct mutual mistakes in furtherance of justice, and administer the remedy according to the very right of the thing, we are wholly unable to see where or how the decree in this case can be said to meet the demands of equity. In any event, should this mortgage be foreclosed, common fairness and justice would say that, as a condition precedent thereto, plaintiff should be required to refund to the Fairs the money received from them in payment of its first mortgage, which was paid upon the representation by plaintiff that they were receiving that for which it was so paid. However, as we view the case, plaintiff is entitled to have its mortgage foreclosed on lots 13 and 14, and is entitled to no relief as against the Fairs. We must not forget that this is not a case where any mistake has been made by a scrivener or person preparing or forming any written instrument. All deeds and mortgages have been drawn just as the parties to them intended. The mistakes are as to the location of the properties, the correct descriptions of which have been stated in the writings, and therefore the law of the reformation of contracts or writings can have no application.

We are next to consider the rights of defendant Sul-

livan in his efforts to foreclose the mechanic's lien set up by him in his cross-petition. The statement of his lien, filed in the office of the register of deeds November 28, 1906, after the discovery of the mistake as to the location of the building, is for "work, labor, skill and material, done and performed and furnished by Dan Sullivan for the said Charles H. McGrew, David L. Fair and Ruth A. Fair under a verbal contract for the erection of a dwelling-house and barn on the following lot, piece or parcel of land, to wit, lots 13, 14, 15 and 16, in block 1," etc. The first item charged in the account is dated September 8, which was prior to the construction of the house, and long before the discovery of the mistake in the correct numbers of the lots. The bill was verified on the 27th of November, 1906. The deed conveying from the McGrews to Fairs lots 15 and 16 was recorded in the proper records of Lancaster county from and after the 29th day of June, 1906, thus giving Sullivan constructive notice of the Fairs' ownership. There is no claim in the evidence that the material was furnished by virtue of or under any contract with either of the Fairs, although so to be inferred from the affidavit attached to the statement of the account, but it clearly appears that such was not the case. The statute (Comp. St. 1909, ch. 54, art. I, sec. 1) as applicable to this case provides that, if any person shall furnish any material for the erection of any house by virtue of a contract, expressed or implied, with the owner thereof or his agents, he shall have a lien to secure the payment of the same upon such house and the lot or land upon which the same shall stand. There is no written contract in the record, and the averment of the cross-petition is that defendant "entered into an oral contract with the defendants, Charlie H. McGrew and Edna I. McGrew", to furnish building material, etc., and there is nothing in the evidence tending to prove in any way that any contract or agreement to furnish the material was had with the Fairs. The material was delivered upon lots 15 and 16, owned by the Fairs, and the

building was constructed to near completion with the knowledge of the Fairs that it was being constructed upon the ground where it was situated, but without their knowledge that that spot was upon lots 15 and 16 owned by them. At that time they were laboring under the belief that the correct numbers of the lots were 13 and 14, owned by the McGrews, and that they, the Fairs, were in possession of lots 15 and 16, but which were in fact lots 17 and 18. We readily concede that in a proper case a mechanic's lien may attach to a building alone where the soil upon which it stands may belong to another. *Pickens v. Plattsmouth Land & Investment Co.*, 31 Neb. 585; *Shull v. Best*, 4 Neb. (Unof.) 212, and other cases which might be cited, but the question now before us is whether the facts here presented come within the principles involved in those cases. The Fairs were misinformed by the McGrews and plaintiff. Their deed to lots 15 and 16 was upon record. Sullivan, if misinformed at all, was also deceived by McGrew, so that upon the question of mistake Sullivan and the Fairs stand on practically the same footing. As we have said, it is clear that there were no contractual relations between Sullivan and the Fairs. There was no "contract or agreement, expressed or implied, with the owner thereof or his agents," as required by the statute, upon which a lien could be based or that would give it any vitality. Nor can we see that the silence of the Fairs, laboring under the honest mistake as they were, could have the effect of either a ratification or estoppel.

In *Rust-Owen Lumber Co. v. Holt,* 60 Neb. 80, the real estate upon which a dwelling-house was erected belonged to a married woman. The contract for furnishing the material for the construction of the dwelling-house was made with her husband. The building was erected with the knowledge of the wife, and after its completion she, with her husband, occupied it as the family residence. In an opinion written by Judge HOLCOMB it was held that there was no proof that the husband acted as the agent

of the wife, nor did her knowledge of the construction of the building or her occupancy of it after its completion constitute a ratification of the husband's acts as her agent, and a right to a lien was denied. Quoting from the opinion it is said: "A mechanic's lien in favor of a principal contractor, therefore, grows out of the contractual relations between the owner of the property improved, or his or her authorized agents, and such principal contractor, and the right thereto, is based upon contract and for the purpose of securing debts due thereunder." The writer of that opinion quotes with approval the following from *Copeland v. Kehoe & Ramsey*, 67 Ala. 594: "A builder's or mechanic's lien is purely statutory. Its character, operation, and extent must be ascertained by the terms of the statute creating and defining it. Of itself, it is a peculiar, particular, special remedy given by statute, founded and circumscribed by the terms of its creation; and the courts are powerless to take it up where the statute may leave it, and extend it to meet the facts and circumstances, which they may believe present a case of equal merit, or a necessity of the same kind, as the cases or necessities for which the statute provides."

There having been no semblance of a contract between Sullivan and the Fairs for furnishing the material used in the construction of the house, and there being no higher equities in favor of Sullivan than the Fairs, it is believed that Sullivan is not entitled to a lien, but must depend upon his judgment against the McGrews for the payment of his claim.

The decree of the district court is reversed and the cause remanded, with directions to dismiss the suit as to the defendants David L. Fair and Ruth A. Fair and Dan Sullivan, and to enter a decree of foreclosure in favor of plaintiff and against Charlie H. McGrew and Edna I. McGrew, foreclosing plaintiff's mortgage on lots 13 and 14 in block 1, of Woods and Kelly's first addition to College View, and such further proceedings as may be necessary to conform to this opinion.

REVERSED.